FILED
2026 Mar-13  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

MARLINE HENDERSON,            )
                             )
          Plaintiff,          )
                             )
vs.                           )        Case No.  7:24-cv-01598-HNJ
                             )
SOCIAL SECURITY               )
ADMINISTRATION, COMMISSIONER, )
                             )
          Defendant.          )

## MEMORANDUM OPINION

Plaintiff Marline Henderson seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 9).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§

2

404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.").

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§

404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . . Substantial evidence . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103 (citations omitted). Therefore, substantial evidence exists even if the evidence

preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

On December 9, 2021, Henderson protectively filed an application for a period of disability and disability insurance benefits, alleging disability as of October 30, 2021. (Tr. 366-70). On December 15, 2021, she filed an application for supplemental security income benefits, alleging disability as of October 30, 2021. (Tr. 371-76).

On June 30, 2022, the Commissioner denied Henderson's claims. (Tr. 179-98). On July 22, 2022, Henderson requested reconsideration of the Commissioner's decision (Tr. 199-201). The Commissioner reviewed Henderson's claim yet, on August 26, 2022, the Commissioner determined the previous denials were proper under the law. (Tr. 202-217).

On October 5, 2022, Henderson filed a request for a hearing. (Tr. 218-220). On February 28, 2023, the ALJ held a hearing. (Tr. 64-90). On May 2, 2023, the ALJ issued an unfavorable decision. (Tr. 141-63).

On June 1, 2023, Henderson appealed the ALJ's decision. (Tr. 290-91, 540-42). On October 12, 2023, the Appeals Council remanded the case to the ALJ for an additional hearing and determination. (Tr. 164-69).

On April 30, 2024, the ALJ held a second hearing. (Tr. 42-63). On July 15, 2024, the ALJ issued another unfavorable decision. (Tr. 14-41).

Applying the five-step sequential process, the ALJ found at step one that

Henderson did not engage in substantial gainful activity after October 30, 2021, her alleged disability onset date. (Tr. 19). At step two, the ALJ found Henderson manifested the severe impairments of lumbar degenerative disc disease with radiculopathy, carpal tunnel syndrome, right proximal humeral fracture, diabetes mellitus, obesity, and depression. (*Id.*). At step three, the ALJ found Henderson's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Next, the ALJ found Henderson exhibited the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations:

> claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach overhead and handle with the bilateral upper extremities. The claimant can have no exposure to unprotected heights, hazardous machinery and commercial driving. She can understand and remember simple instructions and can maintain attention and concentration to carry out simple instructions in at least two-hour intervals over an 8-hour work day with customary breaks. The claimant can adapt to occasional changes in the work environment.

(Tr. 23).

At step four, the ALJ determined Henderson could not perform her past relevant work as an auto inspector. (Tr. 30). However, considering Henderson's age, education, work experience, and residual functional capacity, she could perform jobs existing in significant numbers in the national economy. (*Id.*). Accordingly, the ALJ determined Henderson has not suffered a disability, as defined by the Social Security Act, since

6

October 30, 2021.  (Tr. 31).

Henderson filed a request for review of the ALJ's opinion before the Appeals Council.  (Tr. 364-65, 555-58).  On November 4, 2024, the Appeals Council denied Henderson's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-6).  Henderson filed her complaint with this court on November 20, 2024.  (Doc. 1).

## ANALYSIS

In this appeal, Henderson argues the ALJ's residual functional capacity finding did not include appropriate accommodations for the limited use of her shoulders, arms, and hands, and the ALJ improperly considered the medical opinions of Dr. Jamie Bishop.  For the reasons discussed below, the undersigned concludes Henderson's contentions do not warrant reversal.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). The claimant's RFC represents "the most [the claimant] can still do despite [their] limitations." *Id.* at §§ 404.1545(a)(1), 416.945(a)(1).  Assessing a claimant's RFC lies within the exclusive province of the ALJ.  *See id.* at §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity

7

determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Henderson disputes the existence of substantial evidence for the finding she can frequently reach overhead and handle with the bilateral upper extremities. According to Henderson, "[t]he record supports Dr. Bishop's opinion that she can only rarely push, pull, or perform gross manipulation, and she can never reach or perform fine manipulation." (Doc. 10, at 11 (citing Tr. 2067)).

However, the difference between frequently and rarely using her upper extremities may not materially affect the outcome of Henderson's claim. During the February 28, 2023, administrative hearing, the ALJ asked the vocational expert to assume a hypothetical individual who could perform a range of sedentary work, yet who could "frequently reach overhead as well as handle with the bilateral upper extremities." (Tr. 87). The vocational expert testified such an individual could perform jobs existing in significant numbers in the national economy. (Tr. 87-88). Henderson's attorney asked the vocational expert to assume hypothetical individuals with various other limitations, but the hypotheticals did not include any additional limitations on reaching and handling. (Tr. 88-89).

During the April 30, 2024, administrative hearing, the ALJ again asked the vocational expert to assume a hypothetical individual who could perform a range of sedentary work but could "frequently reach overhead and handle with the bilateral

upper extremities." (Tr. 59). The vocational expert testified such an individual could perform jobs existing in significant numbers in the national economy. (Tr. 60). Henderson's attorney asked the vocational expert to assume a hypothetical individual who could only *occasionally*, not frequently, reach overhead, and the vocational expert testified such an additional limitation would not affect the individual's ability to perform the jobs previously identified. (Tr. 61). Henderson's attorney did not ask the expert's opinion about the vocational abilities of an individual who could *neve*r reach or perform fine manipulation, or who could only *rarely* push, pull, or perform gross manipulation.

Accordingly, the record lacks vocational expert evidence that an individual with all the limitations Dr. Bishop imposed could not perform work existing in significant numbers in the national economy. That gap in the evidence may diminish the dispositive significance regarding the ALJ's consideration of Dr. Bishop's opinion vis-a-vis Henderson's upper body limitations.[2]

---

[2] According to Social Security Ruling 96-9p:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

SSR 96-9P, 1996 WL 374185, at *8 (emphasis in original). "[A] finding of 'disabled' *usually* applies when the full range of sedentary work is significantly eroded . . . ." *Id.* at *3 (emphasis added).

The equivocal language in that ruling does not provide definitive guidance regarding whether the upper body limitations Dr. Bishop assessed would prevent Henderson from performing jobs that

However, even if the discrepancy between Dr. Bishop's assessment and the ALJ's RFC finding bears dispositive significance, the ALJ properly rejected Dr. Bishop's assessment, and she reached an RFC finding supported by substantial evidence.

Social Security regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§

---

exist in significant numbers in the national economy. Vocational expert testimony could have resolved the equivocation, but Henderson's attorney did not elicit such testimony from the vocational expert during the administrative hearing, and "'[t]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'" *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations. *Id.* §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5). The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file. *Id.* §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c)(5), 416.920c(c)(5).

Dr. Bishop completed a "Medical Source Statement (Physical)" form on January 10, 2023. She opined Henderson could sit for a total of two hours and stand or walk for less than one hour during an eight-hour workday. She could lift and/or carry one pound frequently and up to five pounds occasionally. She did not require an assistive device to ambulate. She should avoid dust, fumes, gasses, extreme temperatures, humidity, and other environmental pollutants. She can occasionally climb, balance, and perform fine manipulation; rarely push and pull with her arms and legs, perform gross manipulation, bend, or stoop; and never reach, operate motor vehicles, or work with or around hazardous machinery. Dr. Bishop expected Henderson's treatment to cause

absence from work more than three times a month. Henderson suffered diagnoses of herniation/disc desiccation of the lumber spine after surgery, bilateral carpal tunnel syndrome, and fracture of the humerus. Dr. Bishop stated that objective medical findings confirmed those diagnoses, and Henderson's diagnoses could reasonably cause the limitations she experienced. (Tr. 1549).

Contemporaneously on January 10, 2023, Dr. Bishop completed a "Clinical Assessment of Pain" form. She indicated Henderson experienced pain to such an extent as to distract her from adequate performance of daily activities. Physical activity would increase Henderson's pain sufficiently to warrant bed rest and/or medication. Henderson's prescribed medications could reasonably cause significant side effects that would limit the effectiveness of her work duties and everyday tasks. Her medical condition could reasonably produce the pain of which she complains. Her pain would prevent her from maintaining attention, concentration, and pace for periods of at least two hours. In addition to normal work breaks every two hours, Henderson would need unscheduled breaks due to her pain. Dr. Bishop expected Henderson to remain off task 25% or more of each workday. (Tr. 1550).

The ALJ found Dr. Bishop's opinion

> partially persuasive, as the overall evidence shows the claimant was able to perform a range of sedentary work. Specifically, notes just a few months out from lumbar surgery show generally normal examinations with normal gait, strength and sensation. However, one examination did note some hip flexion weakness on the right but imaging records show good fusion healing and no hardware abnormalities . . . . Additionally, the undersigned finds that Dr. Bishop's opinions are undermined by the

inconsistency between these two opinions and the objective findings in her treatment notes.

(Tr. 29).

On March 20, 2024, Dr. Bishop completed a second "Medical Source Statement (Physical)" form. She indicated Henderson could sit for a total of two hours and stand or walk for a total of one hour during an eight-hour workday. She could lift and/or carry one pound frequently and up to five pounds occasionally. She did not need an assistive device to ambulate. She did not need to avoid dust, fumes, gasses, extreme temperatures, humidity, or other environmental pollutants. Henderson could rarely push and pull with her arms and legs, climb, balance, perform gross manipulation, bend, or stoop. She could never perform fine manipulation, reach, operate motor vehicles, or work around hazardous machinery. Henderson would miss more than three days of work each month due to her symptoms. Henderson suffered diagnoses of bilateral carpal tunnel syndrome, status-post surgery, prolapsed cervical and lumbar discs, arthritis, and humerus fracture. Dr. Bishop stated that objective medical findings confirmed those diagnoses, and Henderson's diagnoses could reasonably cause the limitations she experienced. (Tr. 2067).

Dr. Henderson also completed a second "Clinical Assessment of Pain" form on March 20, 2024. She again indicated Henderson experienced pain to such an extent as to distract her from adequate performance of daily activities. Physical activity would increase Henderson's pain sufficiently to warrant bed rest and/or medication.

13

Henderson's prescribed medications could reasonably cause significant side effects that would limit the effectiveness of her work duties and everyday tasks. Her medical condition could reasonably produce the pain of which she complains. Her pain would prevent her from maintaining attention, concentration, and pace for periods of at least two hours. In addition to normal work breaks every two hours, Henderson would need unscheduled breaks due to her pain. Dr. Bishop expected Henderson to remain off task 25% or more of each workday. (Tr. 1550).

The ALJ found this opinion "persuasive only to the extent it is consistent with a range of sedentary work. Limitations beyond the residual functional capacity and the excessive absenteeism are not supported by the objective medical evidence." (Tr. 29).

The ALJ applied proper legal standards by assessing the consistency of Dr. Bishop's findings with her own treatment notes and the supportability of her findings in the other medical evidence of record. Moreover, substantial evidence supports the ALJ's decision to not fully credit Dr. Bishop's assessments regarding Henderson's upper body functioning.

On May 31, 2022, Dr. Shirin Amlani, a medical resident at Cahaba Medical Care Foundation, whose examination and assessment Dr. Bishop approved, found Henderson had slightly limited range of motion in the right upper extremity; full motor strength in the upper extremities; no atrophy or motor/sensory loss; no effusion or limitation of range of motion in the wrists and fingers; full ability to raise both arms over her head; full ability to reach and lift things off the top shelf in the exam room;

full ability to hold and use a pen; full grip and pinch strength; and full ability to hold various objects in the exam room. Dr. Amlani noted Henderson's chronic pain in her neck, hands, and right arm, yet she stated Henderson had "mobility in all these areas with minor restrictions." (Tr. 1246-47).[3] Those findings support the ALJ's RFC finding.

Henderson argues Dr. Bishop's treatment records also support the doctor's findings, as the records "consistently revealed neck and shoulder pain, shoulder joint pain, and hand joint pain." (Doc. 10, at 10). However, the mere fact Henderson experienced and reported pain in her neck, shoulder, and hand – even if she did so consistently – does not equate to an inability to work. *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (emphasis in original); *Mansfield v. Astrue,* 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart,* 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses

_____

[3] In addition, neither Dr. Amlani nor Dr. Bishop could "give a detailed prognosis without knowing what the patient has tried and not tried but an evaluation by physical therapy is warranted for her findings. There are no red flag signs present on exam or from history today." (Tr. 1247). Henderson has not challenged the ALJ's consideration of this assessment.

placed on [the claimant's] ability to work, a requisite to a finding of disability.").

Indeed, despite Henderson's reports of pain in her upper extremities, Dr. Bishop's treatment records generally do not include any significant functional findings regarding the upper extremities.   To the contrary, Dr. Bishop consistently notes Henderson reports no muscle weakness or swelling in the extremities, and Henderson could care for herself.  (Tr. 879, 921, 929, 1014, 1151, 1162, 1169, 1172, 1180, 1182, 1189, 1191, 1318, 1321, 1337, 1611, 1613, 1621, 1623, 1644, 1647, 1655, 1658, 1773, 1776, 1821, 1823, 1925, 1926, 1935, 1939, 1957, 1959, 1967, 1969, 1993, 1995, 2013, 2015, 2051, 2052, 2097, 2098).  On November 13 and 30, 2023, and on January 20, 2024, Dr. Bishop's examinations revealed normal movement in all extremities.  (Tr. 1926, 1939, 2052).

Accordingly, substantial evidence supports the ALJ's finding that Dr. Bishop's opinion does not bear consistency with her treatment notes.

Henderson also asserts

Dr. Bishop's findings are consistent with the treatment records from Bibb Medical Center showing cervical radiculopathy . . .; the treatment records from the University Orthopaedic Clinic showing pain and stiffness to the right index finger with supporting xrays . . .; the treatment records from the SpineCare Center showing neck pain radiating into the shoulders . . .; the records from Bramlett Orthopedics showing right hand and shoulder joint pain requiring physical therapy and trigger finger injections . . .; and the records from West Alabama Spine & Pain Specialists showing chronic pain in the neck and right shoulder. . . .   MRI of the cervical spine on March 12, 2021, showed degenerative disc disease and thyroid lesion. . . . Ms. Henderson had an epidural steroid injection on May 26, 2021. . . .  She continued to suffer from chronic neck pain radiating to the left shoulder after that epidural injection. . . .

16

(Doc. 10, at 10-11 (record citations omitted)).

However, Henderson again points only to symptoms and conditions, not to functional limitations. Some of the cited records reflect normal functional findings, such as intact or only mildly decreased range of motion, no pain with range of motion, full muscle strength, intact motor function, intact sensation and reflexes, and independent daily living activities. (Tr. 1083, 1103, 1106, 1111, 1114, 1118-19, 1122, 1126, 1129, 1286, 1452, 1454-55, 1686, 1730).[4]

Other medical evidence in the record also supports the ALJ's RFC finding. The ALJ relied upon the findings of state agency medical consultants Victoria Hogan, M.D., and Andre Fontana, M.D. (Tr. 28). *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (ALJ should consider opinions from state agency medical consultants like other medical evidence, as such consultants "are highly qualified and experts in Social Security disability evaluation"). On June 29, 2022, Dr. Hogan reviewed Henderson's medical records and determined Henderson could perform a range of light work with unlimited pushing and pulling in the upper extremities up to 20 pounds, unlimited front and lateral reaching, frequent overhead reaching, and unlimited handling, fingering, and feeling. (Tr. 98-99, 109-110).

On August 25, 2022, Dr. Fontana reviewed Henderson's medical records and

---

[4] Henderson also underwent physical therapy for her lumbar spine, yet those records do not address her upper extremity impairments. (*See* Tr. 1886-1905).

determined she could perform a range of light work with unlimited pushing and pulling in the upper extremities up to 20 pounds, unlimited front and lateral reaching, frequent overhead reaching due to cervicalgia, frequent handling due to carpal tunnel syndrome, and unlimited fingering and feeling. (Tr. 121-23, 135-37). The ALJ deemed the opinions of "Drs. Hogan and Fontana partially persuasive as the overall evidence including treatment notes and the opinion of her treating provider make work at the sedentary exertional level more reasonable." (Tr. 28).

Pursuant to Social Security regulations, the ALJ properly considered the state agency physicians' opinions by assessing their consistency with the other medical evidence. Moreover, substantial evidence, as previously discussed, supported the ALJ's decision to credit the portions of those opinions consistent with the ability to perform a range of sedentary work. Accordingly, those opinions constitute substantial evidence to support the ALJ's RFC finding.

In addition, the ALJ acknowledged the existence of objective imaging records portraying upper body injuries, yet she found those injuries did not cause disabling impairments. A March 12, 2021, cervical MRI exhibited disc disease at C5-6, but no evidence of neural impingement. (Tr. 25, 1365). An April 2021 right shoulder x-ray "showed appropriate alignment and no acute fracture." (Tr. 25, 1135). A February 11, 2022, CT scan, taken after Henderson suffered a humeral fracture in an automobile accident, "showed postoperative change to the humeral hand and proximal humeral shaft consistent with a healing facture," yet Henderson reported arm pain only when

not taking her pain medication, and she displayed no edema in the extremities.  (Tr. 25, 1351).  On February 15, 2023, "right hand x-rays showed a cortical deformity of the distal end of the index finger middle phalanx which appeared chronic," yet Henderson reported medication helped her pain, and she displayed no edema in the extremities. (Tr. 26-27, 1613). On March 8, 2023, Henderson displayed "arthritic deformities with swelling in the fingers of the right hand, [and] tenderness over the small joints of the fingers and some restriction of motion in the fingers."  Even so, "strength was normal at five out of five in the hand and all tested muscle groups as well as normal sensation." (Tr. 27, 1686).

In summary, the ALJ properly considered the medical opinions in the record, properly assessed Henderson's residual functional capacity, and substantial record evidence supports her decision.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 13th day of March, 2026.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE